UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KAMAL AHMAD RASHEED,

        Plaintiff,

    v.

IGOR PURLANTOV,

        Defendant.
_____/

No. C-06-0422 JCS

**ORDER GRANTING APPLICATION FOR COURT JUDGMENT AFTER DEFAULT [Docket No. 51]**

## I. INTRODUCTION

Plaintiff Kamal Ahmad Rasheed, as executor of the estate of Mohamed Ibrahim Darwish Haj Ali ("Darwish"), brought this action against Defendant Igor Purlantov, alleging that Purlantov withdrew money from Darwish's Swiss bank account by forging Darwish's signature. While Purlantov initially appeared through counsel and consented to the jurisdiction of a magistrate judge, his counsel subsequently withdrew and Purlantov, proceeding pro se, failed to appear at scheduled case management conferences on December 8, 2006, and January 19, 2007. He also did not appear or respond to an Order to Show Cause following his failure to appear at the case management conferences. As a result, Purlantov's default was entered on March 5, 2007.

On Friday, May 18, 2007, at 9:30 a.m., a hearing was held on Plaintiff's Application for Court Judgment After Default ("the Motion"). For the reasons stated below, the Motion is GRANTED.

## II. BACKGROUND

### A. The Complaint

In the Complaint, Plaintiff alleges that Darwish was a resident of Contra Costa County. Complaint at 1. Defendant Purlantov is an attorney who is a citizen of New York and is licensed to practice in the State of New York. *Id*. at 2. Purlantov knew that Darwish resided in Contra Costa County. *Id*. Darwish died on October 29, 2004. *Id*. He left a will, which was admitted to probate in the Contra Costa County Superior Court. *Id*. Letters testamentary were issued to Plaintiff on February 22, 2005, and are still in force. *Id*.

Darwish, at the time of his death, had an account or accounts at HSBC Private Bank ("HSBC"), in Geneva, Switzerland, with a balance of over $3 million. *Id*. Previously, in 2002, Purlantov forged Darwish's signature on documents that purportedly gave Purlantov a "right of inspection" of Darwish's accounts with HSBC. *Id*. On October 25, 2004 – just 4 days before Darwish's death – Purlantov again forged Darwish's signature in a letter to HSBC instructing the bank to add Purlantov as a joint account holder to Darwish's accounts. *Id*. On November 18, 2004, after Darwish died, Purlantov forged his signature again on additional documents from HSBC authorizing the bank to add Purlantov as a joint account holder. *Id*. On January 10, 2005, Purlantov withdrew €327,000 ($428,664.30) from Darwish's HSBC accounts and deposited the money in his personal bank account in London. *Id*. On February 8, 2005, Purlantov withdrew another €585,000 ($747,805.50) from Darwish's HSBC accounts and deposited the money in his personal bank account in London. *Id*. at 3. These withdrawals were fraudulent and without authorization by Darwish. *Id*. On the basis of these allegations, Plaintiff asserted claims for conversion and fraud. He requested damages, imposition of a constructive trust over the funds Purlantov took from Darwish's account, injunctive relief to protect Darwish's funds and punitive damages and costs. *Id*. at 3-4.

On April 27, 2006, the Complaint was served by leaving a copy of it with the concierge of Purlantov's apartment building. *See* Certificate of Service, filed May 19, 2006. Purlantov did not timely answer or appear and default was entered against him on June 12, 2006. However, after Purlantov appeared through counsel, the default was vacated on July 18, 2006.

### B. The Motion to Stay and Criminal Investigation

On August 4, 2006, Purlantov brought a Motion to Stay on the basis that there was a pending criminal investigation based on the same conduct alleged in the Complaint. In particular, while Purlantov had not received notice of any indictment or charges filed against him, he had been interviewed by an FBI agent, as had his mother, regarding Purlantov's relationship with Darwish. Declaration of Douglas R. Schwartz in Support of Motion to Stay Action ("Schwartz Decl."). Because defending against Plaintiff's claims in this action would implicate his Fifth Amendment rights, Purlantov asserted, the action should be stayed.

In an order dated September 19, 2006, the Court granted in part and denied in part the Motion to Stay, staying discovery for ninety days with respect to depositions, interrogatories and requests for admissions directed at Purlantov, but permitting all other discovery to proceed. The Court also set a Case Management Conference for December 8, 2006, and instructed the parties to file a statement prior to the conference informing the Court as to the status of the criminal investigation/prosecution.

### C. Withdrawal of Purlantov's Counsel and Purlantov's Subsequent Failure to Appear

On October 5, 2006, Purlantov's counsel filed an application to withdraw and substitute Purlantov, proceeding pro se. Purlantov, however, did not appear at the next case management conference, on December 8, 2006. Nor did he comply with the Court's December 12, 2006 Order instructing him to contact the Courtroom Deputy to make arrangements to appear telephonically at a further case management conference scheduled for January 19, 2007. Purlantov again did not appear at the January 19, 2007 case management conference, and the Court issued an Order to Show Cause why he should not be found in default. Purlantov did not appear at the February 16, 2007 show cause hearing. Prior to that hearing, Plaintiff's counsel, Len Watkins, notified the Court that he had not had any contact with Purlantov, but that someone who said he was Purlantov's father called and told him Purlantov was "hiding out." February 13, 2007 Letter to Court from Len Watkins. Watkins also stated that he had received no further information regarding an FBI investigation. On March 5, 2007, Purlantov's default was entered.

### D. The Default Judgment Motion

Plaintiff now seeks entry of default judgment against Purlantov and an award of damages.[1] In support of his request, Plaintiff provides account statements documenting the withdrawals which are the basis for his damages request, which amount to $1,175,666.99. *See* Declaration of Leonard H. Watkins in Support of Application for Court Judgment After Default ("Watkins Decl."), Ex. 1 (account statements).

## III. ANALYSIS

### A. Personal Jurisdiction

As a preliminary matter, this Court must determine whether or not it has personal jurisdiction over Defendant, Igor Purlantov, who is, according to Plaintiff, a citizen of New York. *See Tuli v. Republic of Iraq*, 172 F.3d 707 (9th Cir. 1999) (holding that the court properly raised sua sponte the question of whether there was personal jurisdiction over Iraq before determining whether default judgment should be entered). In *Tuli*, the Ninth Circuit explained that where a plaintiff seeks default judgment, the court may not assume the existence of personal jurisdiction, even though ordinarily, personal jurisdiction is a defense that may be waived, because a judgment in the absence of personal jurisdiction is void. *Id.* at 712. Therefore, where there are questions about the existence of personal jurisdiction in a default situation, the court should give the plaintiff the opportunity to establish the existence of personal jurisdiction. *Id.*

Here, Plaintiff alleges in the Complaint that Purlantov committed the torts of fraud and conversion against Darwish, knowing that Darwish is a resident of California. Further, the record contains evidence that supports the allegation that Purlantov knew Darwish resided in California. In particular, David A. Brown, a California attorney who provided a declaration in support of a probate petition, states that on October 25, 2004, just before Darwish's death, two men by the name of Purlantov brought Darwish to his office, in El Cerrito California, apparently to have Darwish

---

[1] Plaintiff stipulated at oral argument that he no longer seeks injunctive relief or imposition of a constructive trust.

4

execute legal documents. Schwartz Decl., Ex. 1 (Petition for Authority to Retain Litigation Counsel, Ex. C.

(Declaration of David A. Brown)). Brown concluded that Darwish was not mentally competent and declined to execute any legal documents. *Id.* Based on these allegations and evidence, the Court concludes that it has personal jurisdiction over Igor Purlantov. *See Calder v. Jones*, 465 U.S. 783, 789-90 (1984) (holding that there was personal jurisdiction over the defendants where their tortious conduct was aimed at forum state and they knew the brunt of the injury would be felt there).[2]

### B. Entry of Default Judgment

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, the court may enter a default judgment where the clerk, under Rule 55(a), has previously entered the party's default based upon failure to plead or otherwise defend the action. Fed. R. Civ. P. 55; *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002). However, a defendant's default does not automatically entitle the plaintiff to a court-ordered default judgment. *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). The district court has discretion in its decision to grant or deny relief upon an application for default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *Lau Ah Yew v. Dulles*, 236 F.2d 415-16 (9th Cir. 1956) (affirming district court's denial of default judgment). The court may consider the following factors (known as the *Eitel* factors) in deciding whether to enter a default judgment:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

In considering the sufficiency of the complaint and the merits of the Plaintiffs' substantive claims, facts alleged in the complaint not relating to damages are deemed to be true upon default. *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977); Fed. R. Civ. P. 8(d). On the other

---

[2] The Court also notes that Purlantov appeared in this action and did not challenge the Court's jurisdiction over him.

5

hand, a defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). As a result, where the allegations in a complaint are not "well-pleaded," liability is not established by virtue of the defendant's default and default judgment should not be entered. *Id.*

Damages or other forms of relief are constrained by the rule that "judgment by default shall not be different in kind or exceed in amount that prayed for in the [complaint]." Fed. R. Civ. P. 54(c).

In this case, the amount of money at stake is substantial and there is no evidence in the record that Defendant's failure to appear at the case management conferences or show cause hearing was the result of excusable neglect. Further, Plaintiff has adequately pled claims for fraud and conversion by alleging that Purlantov forged Darwish's signatures in order to gain unauthorized access to Darwish's account and that the bank, accepting the signatures as valid, transferred funds, in two transactions involving specifically identified amounts, from Darwish's accounts to Purlantov's personal account. *See Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996) (elements of fraud are: 1) misrepresentation; 2) knowledge of falsity; 3) intent to induce reliance; 4) justifiable reliance; and 5) resulting damage); *Farmers Ins. Exchange v. Zerin*, 53 Cal. App. 4th 445, 452 (1997) (holding that conversion is the wrongful exercise of dominion over the property of another and that money can be the subject of conversion if a "specific sum capable of identification is involved"). Finally, Plaintiff's attorney informed the Court at oral argument that he is unaware of any pending criminal charges that might warrant deferring ruling on Plaintiff's motion. Therefore, entry of default judgment is appropriate.

**C.     Damages**

In the Complaint, Plaintiff requested $1,176,469.00 in damages. The evidence offered in support of the Motion reflects that in fact, the exact amount of money that was wrongfully taken from Darwish's account was $1,175,666.99.[3] The latter amount represents Darwish's out-of-pocket

---

[3] It appears that the discrepancy arose because in the Complaint, Plaintiff rounded to the nearest thousand the amounts of the withdrawals in Euros instead of providing the precise amounts of the withdrawals.

loss as a result of Defendant's tortious conduct. This is an appropriate measure of damages and is awarded in full. *See Fragale v. Faulkner*, 110 Cal. App. 4th 229, 236 (2003) (noting that one measure of damages in actions for fraud is out-of-pocket loss).

## IV. CONCLUSION

The Motion is GRANTED. Default Judgment shall be entered against Defendant. Plaintiff is awarded $1,175,666.99 in damages.

IT IS SO ORDERED.

Dated: May 23, 2007

JOSEPH C. SPERO
United States Magistrate Judge

7